IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 1, 2023

## IN RE DEZERAY H.[1]

**Appeal from the Chancery Court for Shelby County**
**No. CH-20-0362      Gadson W. Perry, Chancellor**

_____

## No. W2022-01312-COA-R3-PT

_____

This action involves the termination of a mother's parental rights to her minor child. Following a bench trial, the court found that clear and convincing evidence existed to establish the following statutory grounds of termination: (1) abandonment by failure to visit; (2) abandonment by failure to support; (3) abandonment by failure to provide a suitable home; (4) substantial noncompliance with the permanency plans; (5) the persistence of conditions which led to removal; (6) severe child abuse; and (7) failure to manifest an ability and willingness to assume custody of the child. The court also found that termination was in the best interest of the child. We affirm the trial court's ultimate termination decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and KENNY ARMSTRONG, JJ., joined.

Constance Wooden Alexander, Memphis, Tennessee, for the appellant, Crystal H.

Jonathan Skrmetti, Attorney General & Reporter, and Clifton Wade Barnett, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

Susan Mackenzie, Memphis, Tennessee, for the appellees, Dorothy L. and Sabrina A.

---

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

# OPINION

## I. BACKGROUND

Dezeray H. ("the Child") was born to Crystal H. ("Mother") in August 2018.[2] While in the neonatal intensive care unit, the Child tested positive for cocaine and marijuana. Mother admitted drug use since the age of 18 and while pregnant with the Child. The Tennessee Department of Children's Services ("DCS") removed the Child from Mother's custody and placed her in the pre-adoptive home of Sabrina A. and Dorothy L. (collectively "Petitioners") upon the Child's release from the hospital.[3] The Child has remained there continuously since that time. Shortly thereafter, Petitioners obtained custody of an infant, who has grown up with the Child as a sister and was ultimately adopted by Petitioners.

DCS developed a permanency plan for Mother on September 21, 2018, with concurrent goals of (1) return to parent; (2) exit custody with relative; or (3) adoption. The plan included the following requirements: (1) secure and maintain residential stability; (2) submit to random drug screens; (3) complete an alcohol and drug assessment and follow recommendations; (4) complete a parenting assessment; (5) utilize community resources as secondary support for addiction; (6) attend the Child's medical appointments; (7) visit; and (8) provide child support. Mother did not participate in the creation of the plan. The plan was amended twice with the same goals and requirements before a final plan, dated July 28, 2021, was created in which the goals were adjusted to either (1) exit custody with relative or (2) adoption. Mother did not have listed requirements on the final plan.

The Child was adjudicated as dependent and neglected on August 2, 2019, based upon a finding of severe child abuse as a result of the Child testing positive for cocaine and marijuana at birth. DCS was relieved of reasonable efforts to assist Mother.

Elva and Christopher W., the maternal grandparents ("Grandparents"), who reside in Arizona, were identified as a possible relative placement for the Child. Grandmother had previously adopted the Child's biological brother, born in April 2012. Grandparents cooperated with DCS and were ultimately approved as an appropriate placement resource under the Interstate Compact of the Placement of Children ("ICPC") in February 2020. On March 4, 2020, Grandparents moved for the transfer of custody of the Child to Arizona.

On March 11, 2020, Petitioners filed the instant action, petitioning for the Child's adoption and the termination of Mother's parental rights based upon the following statutory grounds: (1) abandonment by failure to visit; (2) abandonment by failure to support; (3)

---

[2] No father was listed on the birth certificate. Mother identified a putative father, who was later excluded based upon DNA test results.

[3] The Child's biological sister was also removed from Mother's care. The sister was placed with her father and is not a party to this appeal.

- 2 -

abandonment by failure to provide a suitable home; (4) substantial noncompliance with the permanency plans; (5) the persistence of conditions which led to removal; (6) severe child abuse; and (7) failure to manifest an ability and willingness to assume custody of the child.[4] DCS was identified as a respondent on the petition. The petition failed to include the Rule 9A notice as required by the Tennessee Rules of Civil Procedure.[5] Petitioners then filed an unverified amended petition that included the Rule 9A notice. On June 23, 2020, DCS filed its answer joining in the petition. On January 31, 2022, Petitioners filed an affidavit verifying the contents of the amended petition.

Grandparents moved to intervene but ultimately agreed to the dismissal of their motion to intervene following extensive litigation.

Mother moved to dismiss the case, arguing that the affidavit did not cure the defect in the unverified amended petition, thereby depriving the chancery court of subject matter jurisdiction. Thereafter, on March 23, 2022, Mother pled guilty to the charges of aggravated assault and robbery, for which she received concurrent sentences of six years' incarceration, suspended to probation.

The court denied Mother's motion to dismiss, and the case proceeded to a hearing, beginning on June 23, 2022. As pertinent to this appeal, DCS, through the testimony of Tawanna Ferguson, proved that Mother did not participate in the creation of the permanency plans, did not maintain contact with DCS,[6] never visited the Child, never provided support, did not complete the requirements of the permanency plans, and was not present at the termination hearing. Ms. Ferguson, a DCS team coordinator, acknowledged that DCS was relieved of reasonable efforts in assisting Mother. Ms. Ferguson confirmed that Mother was provided supervised visitation but that such visitation was never scheduled.

Ms. Ferguson could not confirm whether Mother was advised of the criteria for the termination of her parental rights. However, she explained that such information was attached to the dependency and neglect petition that was mailed to Mother's last known

---

[4] The putative father registry revealed no claims to paternity of the Child. The Unknown Father's parental rights were terminated by default judgment following service by publication.

[5] "In addition to meeting all other applicable rules governing the filing of pleadings, any complaint or petition seeking a termination of parental rights shall contain the following notice: Any appeal of the trial court's final disposition of the complaint or petition for termination of parental rights will be governed by the provisions of Rule 8A, Tennessee Rules of Appellate Procedure, which imposes special time limitations for the filing of a transcript or statement of the evidence, the completion and transmission of the record on appeal, and the filing of briefs in the appellate court, as well as other special provisions for expediting the appeal. All parties must review Rule 8A, Tenn. R. App. P., for information concerning the special provisions that apply to any appeal of this case."

[6] The record reflects that Mother contacted DCS once in January 2019.

address. She stated that the caseworker attempted to contact Mother at her last known address and through Facebook but that the caseworker was unable to locate Mother throughout the custodial episode.

Ms. Ferguson testified that the Child has done well with Petitioners, who consistently meet the Child's needs. She confirmed that the Child has bonded with her foster family and opined that removal from the foster home at this point would be traumatic. She explained that the Child has not seen Mother or maintained any bond since removal at birth approximately four years prior to the hearing.

Latoya Greer, a DCS case manager, testified concerning Petitioners' adoption of their daughter, Harper. She recalled that Harper was placed with Petitioners approximately three weeks after the Child's placement. She provided that throughout her observations of the home, she observed a sibling bond between the Child and Harper and a maternal bond between the Child and Petitioners. She stated that she supervised one visit between the Child and her maternal grandmother. She recalled that the Child was initially upset at her separation from Petitioners but that she calmed down and had an enjoyable visit with her grandmother. However, she believed a long-term separation from Petitioners would be "very devastating."

The director of the Child's preschool testified that she observed a strong bond between the Child and Harper. She described the Child as "very active, very engaged with what goes on in the classroom, very inquisitive, and just a very happy child." She recalled that Petitioners worked closely with the school and Tennessee's early intervention program to ensure that the Child received appropriate therapy services to assist in her development. She provided that the Child evidenced a secure attachment with Petitioners and opined that removal of the Child from the home at this point would be "horrible" and "extremely difficult" for the Child.

Petitioners testified concerning the Child's bond with Harper and the Child's involvement in preschool. Petitioners stated that the Child had visited with Grandparents on only two occasions and that their family was the only family she knew. They described an idyllic life with positive role models and an intent to adopt should she become available for adoption. They denied receiving any support from Mother. Sabrina testified that she contacted Mother, who indicated a desire to see the Child, who was approximately five days old at the time. She advised Mother to contact DCS. She stated that she informed DCS of the interaction but that she did not have any further contact with Mother.

Following the hearing, the court issued a final order in which it found that the evidence presented established the statutory grounds alleged. The court also found that termination of Mother's rights was in the best interest of the Child. This appeal followed.

## II.     ISSUES

We consolidate and restate the issues pertinent to this appeal as follows:

A.     Whether the trial court erred in denying the motion to dismiss the petition.

B.     Whether clear and convincing evidence supports the trial court's finding of statutory grounds for termination.

C.     Whether clear and convincing evidence supports the trial court's finding that termination was in the best interest of the Child.

## III.     STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652–53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

Although parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See In Re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
> (2) [t]hat termination of the parent's or guardian's rights is in the best interest[ ] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn.

2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). "Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Audrey S.*, 182 S.W.3d at 861 (citations omitted). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523–24 (Tenn. 2016) (citations omitted); *see also In re Gabriella D.*, 531 S.W.3d 662, 680 (Tenn. 2017).

Lastly, in the event that the "resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). "Thus, this court gives great weight to the credibility accorded to a particular witness by the trial court." *In re*

*Christopher J.*, No. W2016-02149-COA-R3-PT, 2017 WL 5992359t, at *3 (Tenn. Ct. App. Dec. 4, 2017) (citing *Whitaker*, 957 S.W.2d at 837).

## IV. DISCUSSION

### A.

As a threshold issue, we must address Mother's procedural concerns regarding the termination petition. The record reflects that Petitioners filed the initial petition on March 11, 2020, which failed to include the Rule 9A notice. They then filed an unverified amended petition with the required notice. Finally, on January 31, 2022, they filed an affidavit verifying the contents of the amended petition. Mother contends that the procedural defects present in the first petition and again in the amended petition deprived the trial court of subject matter jurisdiction.

"Whether a court has subject matter jurisdiction over a case is a question of law that we review de novo with no presumption of correctness." *Morgan Keegan & Co., Inc. v. Smythe*, 401 S.W.3d 595, 602 (Tenn. 2013) (citing *Word v. Metro Air Servs., Inc.*, 377 S.W.3d 671, 674 (Tenn. 2012)). "[S]ubject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). A court obtains subject matter jurisdiction from either a statutory or constitutional provision. *Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006). "The existence of subject matter jurisdiction depends on the nature of the cause of action and the relief sought." *Id.* (citing *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994)). Therefore, when a court's subject matter jurisdiction is challenged, the first step is to "ascertain the nature or gravamen of the case," and then to "determine whether the Tennessee Constitution, the General Assembly, or the common law have conferred on [the court] the power to adjudicate cases of that sort." *Staats*, 206 S.W.3d at 542.

The chancery courts in this state have jurisdiction over petitions for the termination of parental rights filed pursuant to Tennessee Code Annotated section 36-1-113(a).[7] Such petitions may be filed by the prospective adoptive parents and must be verified. Tenn. Code Ann. § 36-1-113(b)(1), (d)(1). The statute is silent as to the remedy when a petition is filed without verification. This court has affirmed the trial court's allowance of the amendment of the petition to include the proper verification. *See State v. McCrary*, No. W2005-02881-COA-R3-CV, 2006 WL 1864502, at *6 (Tenn. Ct. App. Jul. 6, 2005) (holding that the language in Section 36-1-113 does not prohibit the amendment of the petition to comply with the statute). Similarly, we hold that the statute does not prohibit a

---

[7] "The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted[.]"

party from filing an affidavit to verify an amended termination petition. We further conclude that the trial court maintained its subject matter jurisdiction over the amended petition that included the Rule 9A notice and was verified pursuant to the later-filed affidavit. We affirm the trial court's denial of Mother's motion to dismiss.

B.

As indicated above, the trial court granted the termination petition based upon the following statutory grounds: (1) abandonment by failure to visit; (2) abandonment by failure to support; (3) abandonment by failure to provide a suitable home; (4) substantial noncompliance with the permanency plans; (5) the persistence of conditions which led to removal; (6) severe child abuse; and (7) failure to manifest an ability and willingness to assume custody of the child. Mother objects to the court's application of the ground of the persistence of conditions but does not object to the other grounds. DCS does not defend the application of the three grounds of abandonment or substantial noncompliance. We will consider each ground as required by our Supreme Court. *In re Carrington H.*, 483 S.W.3d at 525–26 ("[T]he Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests.").

1.     Abandonment by failure to visit

Parental rights may be terminated for abandonment when a parent fails to visit a child for a period of four consecutive months immediately before the filing of a petition to terminate parental rights. Tenn. Code Ann. § 36-1-102(1)(A)(i). A failure to visit "means the failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). The statute requires that parents offer their children more than "token visitation," defined as visitation that "under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C).

A parent may assert as an affirmative defense pursuant to Tennessee Rule of Civil Procedure 8.03 that his or her failure to visit was not "willful." Tenn. Code Ann. § 36-1-102(1)(I). The burden is on the parent asserting the affirmative defense to prove by a preponderance of the evidence that his or her failure to visit was not willful. *Id.*; *In re Kolton C.*, No. E2019-00736-COA-R3-PT, 2019 WL 6341042, at *5 (Tenn. Ct. App. Nov. 26, 2019).

Here, the petition was filed on March 11, 2020. The relevant four-month period is from November 11, 2019, through March 10, 2020. *See In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014) (statutory four-month period covers four months preceding the day the termination petition was filed

- 8 -

and does not include the day petition was filed). The trial court found that Mother had abandoned the Child by her failure to visit, having not seen the Child since birth.

There is no dispute that Mother did not visit the child in the four months immediately preceding the filing of the petition to terminate her parental rights. Mother did not plead a lack of willfulness in her answer to the petition and does not object to this ground of termination on appeal. However, the record is devoid of evidence establishing that Mother was provided with a copy of the criteria for termination of her parental rights advising her of the consequences of her failure to visit the Child. The record reflects that Mother was not present at any hearing or child and family team meeting and that DCS failed to maintain contact with her to advise her of the criteria for termination of her parental rights. In such cases, DCS is tasked with filing an affidavit that describes in detail the party's diligent efforts to bring such notice required by statute to the parent's attention. Tenn. Code Ann. § 37-2-403(a)(2)(B)(ii)(c). The record does not contain such an affidavit. DCS also does not defend this ground of termination on appeal. The record simply does not support this ground of abandonment under the circumstances presented. This conclusion does not end our inquiry because only one statutory ground is required to support the termination of Mother's parental rights. Tenn. Code Ann. § 36-1-113(c).

2.      Abandonment by failure to support

Abandonment can occur when a parent has "failed to support or [ ] failed to make reasonable payments toward the support of the child" for a period of four consecutive months immediately before the filing of a petition to terminate parental rights. Tenn. Code Ann. § 36-1-102(1)(A)(i). The statute defines failure to support as a parent's failure "for a period of four (4) consecutive months, to provide monetary support or the failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D). By statute, parents are expected to offer more than "token support," which "means that the support, under the circumstances of the individual case, is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B). "Every parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children." Tenn. Code Ann. § 36-1-102(1)(H).

A lack of willfulness can constitute an affirmative defense to the ground of failure to support. Tenn. Code Ann. § 36-1-102(1)(I). A parent "shall bear the burden of proof that the failure to . . . support was not willful" and must establish the lack of willfulness by a preponderance of evidence. *Id.* As stated previously, the relevant time period is from November 11, 2019, through March 10, 2020. There is no dispute that Mother failed to pay any child support throughout the custodial episode. Mother did not plead the absence of willfulness as an affirmative defense to her failure to pay support and does not object to this ground of termination on appeal. However, the record is devoid of any evidence establishing Mother's means or ability to remit support, e.g., whether she was employed or

- 9 -

capable of retaining employment during the relevant time period. While the parent is tasked with pleading a lack of willfulness, this ground of termination must still be supported by clear and convincing evidence. The record is also devoid of evidence establishing that Mother was provided with a copy of the criteria for termination of her parental rights advising her of the consequences of her failure to support. DCS did not provide an affidavit describing its efforts to bring such notice to her attention. Tenn. Code Ann. § 37-2-403(a)(2)(B)(ii)(c). DCS does not defend this ground on appeal. We reverse this ground of termination based upon the circumstances presented. This conclusion does not end our inquiry because only one statutory ground is required to support the termination of Mother's parental rights. Tenn. Code Ann. § 36-1-113(c).

### 3. Abandonment by failure to provide a suitable home

A parent may be found to have abandoned his or her child by failing to establish a suitable home. Tenn. Code Ann. § 36-1-113(g)(1). This ground for the termination of parental rights is established when:

(a) The child has been removed from the home or the physical or legal custody of a parent or parents . . . by a court order at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and the child was placed in the custody of the department or a licensed child-placing agency;

(b) The juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and

(c) For a period of four (4) months following the physical removal, the department or agency made reasonable efforts to assist the parent or parents . . . to establish a suitable home for the child, but that the parent or parents . . . have not made reciprocal reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent . . . in establishing a suitable home for the child shall be found to be reasonable if such efforts equal or exceed the efforts of the parent . . . toward the same goal, when the parent . . . is aware that the child is in the custody of the department[.]

Tenn. Code Ann. § 36-1-102(1)(A)(ii).

While DCS was relieved of reasonable efforts as a result of the court's finding of severe child abuse, this ground of termination requires evidence of some reasonable efforts to assist the parent in establishing a suitable home following removal. The record before this court does not contain any evidence of DCS's efforts to assist Mother or to even maintain contact with Mother throughout the custodial episode. DCS does not defend this ground of termination on appeal. We reverse this ground of termination based upon the circumstances presented. This conclusion does not end our inquiry because only one statutory ground is required to support the termination of Mother's parental rights. Tenn. Code Ann. § 36-1-113(c).

4.     Substantial noncompliance

A court may terminate a parent's parental rights when the parent is in "substantial noncompliance . . . with the statement of responsibilities in a permanency plan." Tenn. Code Ann. § 36-1-113(g)(2). To terminate parental rights under this ground, the court "must first find that the plan requirements are reasonable and related to conditions that necessitate foster care placement." *In re Hannah H.*, No. E2013-01211-COA-R3-PT, 2014 WL 2587397, at *10 (Tenn. Ct. App. June 10, 2014). "Conditions necessitating foster care placement may include conditions related both to the child's removal and to family reunification." *In re Valentine*, 79 S.W.3d at 547. "The trial court must then find that the noncompliance is substantial." *In re Hannah H.*, 2014 WL 2587397, at *10 (citation omitted). When determining whether a parent's noncompliance with a plan was substantial, the court must do more than "count[ ] up the tasks in the plan to determine whether a certain number have been completed." *In re Carrington H.*, 483 S.W.3d at 537. DCS must show "that the parent's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met." *In re M.J.B.*, 140 S.W.3d at 656 (citing *In re Valentine*, 79 S.W.3d at 548–59; *In re Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *12 (Tenn. Ct. App. June 3, 2003)).

Mother failed to comply with the requirements of the permanency plans and does not object to the application of this ground of termination. However, the record is devoid of evidence establishing that Mother was advised of the permanency plan requirements. She did not participate in the creation of the plan or attend any of the permanency plan hearings. The record does not contain evidence establishing that she even received a copy of the plan with the pertinent requirements. As explained previously, Mother was not provided with a copy of the criteria for termination of her parental rights. DCS did not provide an affidavit describing its efforts to bring such notice required by statute to her attention. Tenn. Code Ann. § 37-2-403(a)(2)(B)(ii)(c). DCS does not defend this ground of termination. We decline to sustain this ground of termination under the circumstances presented. This conclusion does not end our inquiry because only one statutory ground is required to support the termination. Tenn. Code Ann. § 36-1-113(c).

- 11 -

### 5.    Persistence of conditions

Under Tennessee law, a trial court may terminate parental rights when:

(3)(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:

(i)    The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;

(ii)    There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and

(iii)    The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3).  Termination of parental rights requires clear and convincing evidence of all three factors. *In re Valentine*, 79 S.W.3d at 550.  Additionally, the persistence of conditions ground may only be applied "where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." *In re Audrey S.*, 182 S.W.3d at 874.

The record reflects that the conditions which led to removal in this case were child safety concerns due to Mother's drug abuse in utero.  No evidence was presented concerning Mother's attempt to alleviate such concerns.  However, evidence was also not presented to establish Mother's continued drug abuse.  Other conditions also exist that would cause the Child further neglect, including Mother's criminal history during the custodial episode.  Mother pled guilty to charges of aggravated assault and robbery, for which she received concurrent sentences of six years' incarceration, suspended to probation.  Following our review, we conclude that there is little likelihood that other conditions now found will be remedied at an early date so that the Child can be safely returned in the near future and that the continuation of the parent's relationship greatly diminishes the Child's chances of early integration into a safe, stable, and permanent home.  Accordingly, we affirm the trial court on this ground of termination.

### 6. Severe child abuse

The trial court terminated Mother's parental rights pursuant to Tennessee Code Annotated section 36-1-113(g)(4), which provides:

> The parent or guardian has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights . . . to have committed severe child abuse against any child[.]

As relevant here, Section 37-1-102(27) defines "severe child abuse" as:

> (A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death[.]

On August 2, 2019, the Juvenile Court of Memphis and Shelby County entered an order adjudicating the Child dependent and neglected and finding that she was the victim of severe child abuse perpetrated by Mother due to in utero drug exposure. This order was final and was not appealed. Therefore, the severe abuse finding is res judicata. *In re Dakota C.R.*, 404 S.W.3d 484, 497 (Tenn. Ct. App. 2012). We apply the doctrine of res judicata "to prevent a parent from re-litigating whether she committed severe child abuse in a later termination of parental rights proceeding, when such a finding ha[s] been made in a previous dependency and neglect action." *In re Heaven L.F.*, 311 S.W.3d 435, 439 (Tenn. Ct. App. 2010). The severe abuse finding in the August 2019 order satisfies the "under any prior order of a court" language in Tennessee Code Annotated section 36-1-113(g)(4). Accordingly, we affirm the trial court's judgment terminating Mother's parental rights on this ground.

### 7. Failure to manifest an ability and willingness to assume custody

Pursuant to Tennessee Code Annotated section 36-1-113(g)(14) parental rights may be terminated when:

> A parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14). This ground requires the petitioner to prove two

- 13 -

elements by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1), (g)(14); *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020). First, a petitioner must prove that the parent failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the child. *In re Neveah M.*, 614 S.W.3d at 674. Second, a petitioner must prove that placing the child in the parent's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child. *Id.*

As to the first element, our Supreme Court has instructed as follows:

[S]ection 36-1-113(g)(14) places a conjunctive obligation on a parent or guardian to manifest both an ability and willingness to personally assume legal and physical custody or financial responsibility for the child. If a person seeking to terminate parental rights proves by clear and convincing proof that a parent or guardian has failed to manifest either ability or willingness, then the first prong of the statute is satisfied.

*Id.* at 677 (citation omitted).

As to the second element, whether placing the child in the parent's custody "would pose a risk of substantial harm to the physical or psychological welfare of the child," we have explained:

The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Virgil W.*, No. E2018-00091-COA-R3-PT, 2018 WL 4931470, at *8 (Tenn. Ct. App. Oct. 11, 2018) (quoting *Ray*, 83 S.W.3d at 732 (footnotes omitted)).

The record reflects that Mother failed to establish an ability to care for the Child. Mother did not appear at the hearing and provided no evidence establishing her income or a suitable residence for the Child. Mother was placed on a sentence of six years' incarceration, suspended to probation for convictions of aggravated assault and robbery shortly before the hearing. Mother does not request custody of the Child on appeal. Instead, she suggests placement of the Child with Grandparents. From these facts, we agree with the trial court that Mother displayed an overall lack of an ability and willingness to assume legal and physical custody of the Child. The record further supports a finding

- 14 -

that placing the Child with her would pose a risk of substantial physical or psychological harm to the Child's welfare given her failure to establish her ability to care for the Child. We affirm the trial court's judgment terminating Mother's parental rights on this ground.

B.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground of termination, we must consider whether termination was in the best interest of the Child. Effective April 22, 2021, the General Assembly amended Tennessee Code Annotated § 36-1-113(i) by deleting the previous subsection in its entirety and substituting a new subsection providing, inter alia, 20 factors to be considered in determining whether termination is in the child's best interest. *See* 2021 Tenn. Pub. Acts, Ch. 190 § 1 (S.B. 205). The amended statute does not apply to this action, filed on March 11, 2020. *In re Riley S.*, No. M2020-01602-COA-R3-PT, 2022 WL 128482, at *14 n.10 (Tenn. Ct. App. Jan. 14, 2022) *perm. app. denied* (Tenn. Mar. 17, 2022).

The following non-exhaustive list of factors are applicable to this action:

(i) In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[8]

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

---

[8] *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

Mother has failed to ready herself for the Child's return and was on probation at the time of the hearing. Tenn. Code Ann. § 36-1-113(i)(1). Mother has not visited the Child since birth and has not otherwise established a meaningful relationship with her. Tenn. Code Ann. § 36-1-113(i)(3), (4). Meanwhile, the Child is in a foster home with parents who wish to adopt her and another child she has only ever known as a sibling. A change of caretakers at this point would be emotionally detrimental to her. Tenn. Code Ann. § 36-1-113(i)(5). Mother was found to have committed severe child abuse due to the Child's drug exposure while in utero. Tenn. Code Ann. § 36-1-113(i)(6). Questions remain as to Mother's ability to provide a safe and stable home for the Child when Mother suggested

placement with the maternal grandparents instead of a return to her custody. Tenn. Code Ann. § 36-1-113(i)(7). Mother has not remitted child support throughout the custodial episode. Tenn. Code Ann. § 36-1-113(i)(9). The Child should be permitted to achieve permanency in the only home she has ever known since birth. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Mother's parental rights was in the best interest of the Child. We affirm the trial court.

## V. CONCLUSION

The judgment of the trial court is affirmed, in part, and reversed, as to the trial court's finding of termination based upon (1) abandonment by failure to visit; (2) abandonment by failure to support; (3) abandonment by failure to provide a suitable home; and (4) substantial noncompliance with the permanency plans. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Crystal H.

_____
JOHN W. McCLARTY, JUDGE